

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Daniel Vázquez Pagán<br>　　　Lesionado<br><br>Nora Hernández Morales, et al<br>　　　Peticionarios<br><br>Policía de Puerto Rico<br>　　　Patrono Asegurado<br><br>　　　　　v.<br><br>Corporación del Fondo del Seguro del Estado<br>　　　Recurrido<br><br>Comisión Industrial de Puerto Rico<br><br>　　　Agencia Recurrida | Certiorari<br><br>2011 TSPR 156<br><br>183 DPR ____ |

Número del Caso:　CC　　　- 2010 - 56


Fecha: 24 de octubre de 2011


Tribunal de Apelaciones:

　　　　　　　Región Judicial de San Juan, Panel II

Juez Ponente:　　　　Carmen A. Pesante Martínez


Abogado de la Parte Peticionaria:

　　　　　　　Lcdo. Iván Torres Rivera

Abogada de la Parte Recurrida:

　　　　　　　Lcda. Aleida Marxuach Rodriguez


Materia:　　　Revisión de Resolución Administrativa Comisión Industrial de Puerto Rico


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Daniel Vázquez Pagán<br>  Lesionado<br><br>Nora Hernández Morales, et al.<br>  Peticionarios<br><br>Policía de Puerto Rico<br>  Patrono Asegurado<br><br>v.<br><br>Corporación del Fondo del Seguro<br>del Estado<br>  Recurrido<br><br>Comisión  Industrial  de  Puerto<br>Rico<br>  Agencia Recurrida | CC-2010-56 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico a, 24 de octubre de 2011.

En el presente caso nos corresponde determinar si el Tribunal de Apelaciones actuó correctamente al confirmar las decisiones de la Corporación del Fondo del Seguro del Estado y la Comisión Industrial, en un proceso de evaluación de incapacidad total permanente de un obrero, en el que dichos foros sostuvieron el cierre automático del proceso por causa de su muerte. Por considerar que tal cierre automático no procedía, revocamos.

I

En el 1993 el Sr. Daniel Vázquez Pagán sufrió un accidente ocupacional mientras se desempeñaba como agente de la Policía de Puerto Rico. El accidente ocurrió cuando el agente, al salir de una oficina de la Policía, tropezó

con una silla y se lastimó la espalda, el cuello y la cabeza. Por causa de ello, la Corporación del Fondo del Seguro del Estado (C.F.S.E) le otorgó una incapacidad de 5% por la pérdida de las funciones fisiológicas del brazo derecho en o más arriba del codo.[1] Además, por su condición de la espalda le otorgó un 35% de incapacidad de las funciones fisiológicas generales.

Posteriormente, mientras el caso antedicho seguía su curso en la C.F.S.E. y en la Comisión Industrial, el señor Vázquez Pagán presentó una nueva reclamación por otro accidente ocupacional acaecido, esta vez, en el 2000.[2] En esa ocasión, conforme a la investigación de la C.F.S.E., el señor Vázquez Pagán cayó al suelo por tropezar con la raíz de un árbol (dentro de los predios del patrono) cuando realizaba labores de limpieza en los alrededores de un cuartel. De esa forma, recibió golpes en el hombro y brazo derecho, las piernas, la cabeza y otras partes del cuerpo.[3]

Luego de varias evaluaciones, en el 2002 la C.F.S.E. determinó que, a base de ese accidente, sólo era compensable el diagnóstico de trauma de cabeza.[4] Del informe médico surgía que el agente padeció de "Meningioma Parietal Izquierdo", "Convulsión", "C.V.A." y "Status Post Craneotomía", sin embargo, la C.F.S.E. concluyó que esas

---

[1] Caso de la C.F.S.E. Núm. 93-21-00825-2.

[2] Íd.

[3] Véase Apéndice del Alegato en Oposición, pág. 29.

[4] Íd.

condiciones no estaban relacionadas con el accidente.[5] Más adelante, la Comisión Industrial recomendó otorgar una incapacidad de 5% de funciones fisiológicas al señor Vázquez Pagán por el trauma de cabeza.

En relación con el primer caso (1993), el señor Vázquez Pagán solicitó una determinación de mayor incapacidad. Así, en junio de 2004 la Comisión Industrial refirió al agente a la C.F.S.E. para que el Comité de Factores Socio-Económicos (Comité) determinara si éste estaba incapacitado totalmente para desempeñar una tarea remunerativa. El 23 de agosto de 2005, día en el que confirmó la otorgación del 5% de incapacidad, la Comisión Industrial también ordenó nuevamente al Comité realizar la evaluación correspondiente para determinar la procedencia o no de una incapacidad total. La Comisión Industrial ordenó que dicha evaluación incluyera todos los casos activos del señor Vázquez Pagán en la C.F.S.E., incluyendo los dos casos que versan sobre los accidentes ocupacionales antedichos.[6]

Así las cosas, luego de un intrincado proceso, el Comité sólo logró obtener la evaluación del especialista en rehabilitación. El informe reveló lo siguiente:

> El Sr. Daniel Vázquez Pagán fue referido por Factores Socio Económicos. Posee una escolaridad de tercer año de universidad. Su experiencia ocupacional es de conductor en

---

[5] Íd.

[6] Los casos que debían evaluarse en conjunto eran: el 90-21-00542-6, el 87-56-01804-2, el 93-21-00825-2 y el 01-15-01105-9. Véase Apéndice del Alegato en Oposición, pág. 23.

mueblería durante nueve años aproximadamente y Policía Estatal desde el 1986 al 2000. La última vez que trabajó fue en julio de 2000. Tiene reconocido los diagnósticos de Discos Herniados L4-L5, Esguince Lumbo Sacral, Trauma Cervico Dorsal, Sprain Hombro Derecho y Desorden Distímico leve. Alegó padecimiento por condición no relacionada de Meningioma y CVA. El [sic] indica que fue operado en la Clínica Oncológica por tumor cerebral y en el Hospital Pavía, en febrero de 2006. Presentó evidencia médica del tratamiento recibido en el Hospital Pavía. El [sic] menciona que toma anticonvulsivos diariamente para epilepsia. Hace uso de silla de ruedas para moverse. Indica que no puede permanecer de pie, ni caminar debido a que la condición del tumor le afectó. Además, tiene dificultad para el agarre, sostener pesos y para la escritura.

El [sic] vive con un hijo actualmente, quien lo cuida y le provee ayuda económica. Alegó que no pudo reincorporarse al trabajo como consecuencia del accidente de trabajo en julio de 2000. Solicitó retiro por incapacidad ocupacional y no se lo han aprobado. Desconoce el "status" de su solicitud, en la oficina de Retiro.

No se exploraron otras alternativas vocacionales, debido a que en estos momentos es poco probable que él pueda envolverse en algún tipo de trabajo. El [sic] está recuperándose de la cirugía que le hicieron en febrero de este año y posiblemente lo operen nuevamente.

**En mi opinión las expectativas de rehabilitación vocacional son pobres en estos momentos, debido a su condición médica actual.**[7]

Ya rendido este informe, y sin que hubiese culminado el proceso de evaluación del Comité, en el 2007 el señor Vázquez Pagán falleció por causa ajena a los accidentes ocupacionales. Según el expediente, tanto el señor Vázquez Pagán como el Comité, intentaron infructuosamente cumplir a cabalidad con la evaluación. En principio, el señor Vázquez

---

[7] Apéndice de la Petición de *Certiorari*, pág. 47. Énfasis suplido.

Pagán presentó mociones ante la Comisión Industrial para que la C.F.S.E. realizara la evaluación. Posteriormente, la C.F.S.E. intentó contactarle pero éste estaba fuera de Puerto Rico en un tratamiento médico.

Así las cosas, el 8 de mayo de 2008 la C.F.S.E. ordenó el cierre y archivo del caso. Determinó que resultaba imposible cumplir con la orden de la Comisión porque no procedía una Incapacidad Total *Post Mortem*. Explicó que no procedía la evaluación del Comité porque el señor Vázquez Pagán no tenía un futuro laboral, principio rector para el otorgamiento de una incapacidad total permanente. Enfatizó que la C.F.S.E. no le adeudaba dinero alguno al señor Vázquez Pagán al momento de su muerte. Señaló, además, que las únicas personas que cualificaban como beneficiarios del señor Vázquez Pagán eran su viuda, Nora Hernández Morales, y sus tres hijos menores de edad (los peticionarios).

Inconformes con el cierre y archivo del caso, los peticionarios apelaron ante la Comisión Industrial, y ésta confirmó el dictamen de la C.F.S.E. Oportunamente, los peticionarios solicitaron reconsideración, la cual fue debidamente acogida por la Comisión Industrial y luego declarada "no ha lugar".

Los peticionarios presentaron oportunamente un recurso de revisión ante el Tribunal de Apelaciones. En dicho escrito adujeron que la Comisión Industrial erró al determinar que como beneficiarios del señor Vázquez Pagán

no tenían derecho a la continuación del proceso evaluativo para determinar la incapacidad total permanente. Sin embargo, el foro apelativo intermedio confirmó el dictamen recurrido porque, según determinó, ante el fallecimiento del señor Vázquez Pagán "la agencia no podía tomar una determinación razonable sobre si procedía concederle la incapacidad aducida".[8] De igual forma, sostuvo que como la muerte del lesionado fue por una causa ajena al accidente ocupacional, no existía el derecho a la reclamación. El Tribunal de Apelaciones concluyó, además, que los beneficios reclamados son un derecho personalísimo que se extingue con la muerte del lesionado, por lo que no procedía la sustitución de éste por los beneficiarios.

Inconformes con el dictamen del foro apelativo intermedio, los peticionarios presentaron oportunamente el recurso de epígrafe alegando la comisión de múltiples errores, los cuales se enumeran a continuación:

1. Incidió el Honorable Tribunal de Apelaciones al resolver que los beneficiarios del lesionado fallecido no tienen derecho a continuar el proceso evaluativo por conducto del Comité de Factores Socio-Económicos para una recomendación y posterior determinación sobre Incapacidad Total y Permanente, cuando lo cierto es que obra una Decisión Institucional Sobre Dependencia de la Corporación del Fondo del Seguro del Estado que reconoce a la viuda y a los hijos menores de edad como dependientes y beneficiarios del obrero fallecido.

2. Incidió el Honorable Tribunal de Apelaciones al dictaminar que solamente el Comité de Factores Socio-Económicos evalúa al obrero exclusivamente y que tal derecho es personalísimo cuando lo cierto es que dicho

_____

[8] Íd., pág. 32.

Comité toma en consideración el núcleo familiar de éste y los ingresos que tienen ambos cónyuges, conforme lo establece el Reglamento sobre Factores Socio-Económicos.

3. Incidió el Honorable Tribunal de Apelaciones al interpretar el Reglamento de Factores Socio-Económicos en su sección 2 inciso 7 en perjuicio y detrimento de los dependientes, (viuda e hijos menores) toda vez que éstos son considerados por el Comité en la evaluación social y económica que se realizan al respecto conforme las disposiciones antes mencionadas.

4. Incidió el Honorable Tribunal de Apelaciones al no considerar el Informe del Especialista en Rehabilitación señor Raúl Romero Pérez, el cual señaló que las expectativas de rehabilitación vocacional son pobres en estos momentos, debido a su condición médica actual.

5. Incidió el Honorable Tribunal de Apelaciones al determinar que la Corporación del Fondo del Seguro del Estado no podía tomar una determinación razonable sobre si procedía concederle la incapacidad aducida es decir, la Incapacidad Total y Permanente por la vía de los Factores Socio-Económicos.

6. Incidió el Honorable Tribunal de Apelaciones al resolver que la actuación de la Corporación del Fondo del Seguro del Estado fue una razonable y además que no procedía una Incapacidad Post Mortem.

7. Incidió el Honorable Tribunal de Apelaciones al interpretar conforme a derecho el Artículo 2 de la Ley 45 de 18 de abril de 1935, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo.[9]

Expedido el auto y perfeccionado el caso, nos disponemos a resolver. Por estar íntimamente relacionados, discutiremos todos los errores señalados, en conjunto.

---

[9] Petición de *Certiorari*, págs. 6-7.

II

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada (Ley Núm. 45),[10] es una legislación de carácter remedial que le brinda ciertas garantías y beneficios al obrero en el contexto de accidentes o enfermedades ocupacionales que ocurren en el escenario del trabajo.[11] Dicho estatuto establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños.[12]

La Ley Núm. 45 dispone, como remedios a concederse, la asistencia médica y la compensación por incapacidad transitoria, permanente (parcial o total), así como por muerte.[13] Los acreedores de esos remedios compensatorios son todos aquellos obreros y empleados que trabajan para patronos asegurados y que sufran lesiones, se inutilicen o pierdan la vida por accidentes o enfermedades ocasionadas por un acto o función inherente a su trabajo o empleo, y

---

[10] 11 L.P.R.A. sec. 1 *et seq.*

[11] Toro v. Policía, 159 D.P.R. 339, 352-353 (2003); Rivera v. Blanco Vélez Stores, 155 D.P.R. 460, 466 (2001); Santiago Hodge v. Park Davis Co., 126 D.P.R. 1, 8 (1990).

[12] Toro v. Policía, *supra*, pág. 353.

[13] 11 L.P.R.A. sec. 3.

que ocurran en el curso de éste y como consecuencia del mismo.[14]

Por otro lado, como parte de los componentes de la C.F.S.E. se creó el Comité de Factores Socio-Económicos (Comité). Dicho Comité tiene su génesis al amparo del Reglamento Núm. 3470 de la C.F.S.E. de 12 de junio de 1987, Reglamento sobre Factores Socio-Económicos (Reglamento) y a base de varias decisiones nuestras.[15] El propósito principal del Reglamento es establecer las bases que permitan el estudio, análisis y una determinación uniforme de los casos en los que exista la posibilidad de una incapacidad total permanente por factores socio-económicos.[16] El Comité es una estructura administrativa creada en cada Oficina Regional de la C.F.S.E. que ayuda a dicha corporación en la función fundamental de evaluar la capacidad de un obrero lesionado para realizar un empleo remunerativo.[17]

Según se desprende del Reglamento, el objetivo y función del Comité es evaluar los casos de los obreros o empleados a los que se les haya reconocido una incapacidad parcial permanente de 60% o más de las funciones

---

[14] Art. 2 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 2; Martínez v. Bristol Myers, Inc., 147 D.P.R. 383, 394 (1999).

[15] Las decisiones son: Rodríguez Ortiz v. Comisión Industrial, 90 D.P.R. 764 (1964); Arzola Maldonado v. Comisión Industrial, 92 D.P.R. 549 (1965) y Herrera Ramos v. Comisión Industrial, 108 D.P.R. 316 (1979).

[16] Reglamento sobre factores socio-económicos Núm. 3470, Corporación del Fondo del Seguro del Estado, 12 de junio de 1987, pág. 1.

[17] Agosto Serrano v. F.S.E., 132 D.P.R. 866, 871 (1993); Sec. 1.2 del Reglamento, *supra*.

fisiológicas generales, a los fines de determinar si éste es acreedor de una incapacidad total y permanente.[18] Sin embargo, en Agosto v. F.S.E., 132 D.P.R. 866 (1993) este Tribunal aclaró que no se debía limitar la incapacidad total por factores socioeconómicos sólo a obreros o empleados que poseían un 60% de incapacidad en las funciones fisiológicas. A tales efectos, expresó que "[e]l aludido criterio de sesenta por ciento (60%) de incapacidad fijado por el Fondo no debe ser utilizado como norma inflexible que excluya en casos meritorios la evaluación de alguna reclamación".[19] Es decir, el Comité ya no está limitado por el por ciento de incapacidad para evaluar los casos de los obreros o empleados lesionados.

El Comité realizará la evaluación con el propósito de determinar, si al considerar la incapacidad desde el punto de vista médico, junto a los factores socio-económicos, el obrero o empleado resulta o no acreedor de una incapacidad total y permanente. En cuanto a los factores socio-económicos, estos son definidos en el Reglamento como:

> Aquellos factores que gravitan para facilitar u obstaculizar el que un obrero pueda ganarse el sustento propio y el de su familia en forma ordinaria y de manera estable. Se considerarán los siguientes factores: el impedimento físico y/o mental del trabajador y su extensión, medido y expresado desde el punto de vista médico en términos de pérdida de las funciones fisiológicas generales y el efecto de ese impedimento físico y/o mental sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo en forma ordinaria y de

---

[18] Secs. 3.2 y 4.1 del Reglamento.

[19] Agosto Serrano v. F.S.E., supra, pág. 877.

manera estable, la edad, escolaridad, sexo y las destrezas del obrero.[20]

De esa forma, la evaluación realizada por el Comité no puede considerar únicamente el por ciento de incapacidad desde el punto de vista médico, sino que está obligado a considerar también los factores socio-económicos.

Ahora bien, al adentrarnos en la presente controversia e interpretar la Ley Núm. 45 no podemos obviar los "propósitos amplios y humanitarios que inspiraron su redacción de brindar, en lo posible, la protección que el obrero fallecido representaba para los que de él dependían".[21] De igual forma, como estatuto de carácter remedial, la Ley Núm. 45 debe interpretarse liberalmente a favor del obrero.[22]

Con ello en mente, la primera cuestión que debemos aclarar es si la C.F.S.E. puede otorgar una incapacidad a un obrero con posterioridad a su muerte. La respuesta es en la afirmativa. En varias ocasiones este Tribunal ha reconocido y avalado la otorgación de una incapacidad *post mortem*.[23] En esas ocasiones las incapacidades concedidas estaban dirigidas exclusivamente al aspecto físico y médico del empleado u obrero lesionado, ya que para la fecha en

---

[20] Sec. II, inciso (7) del Reglamento sobre factores socio-económicos, *supra*, pág. 2.

[21] Bruno Colón v. Comisión Industrial, 109 D.P.R. 785, 787 (1980).

[22] Art. 2 de la Ley Núm. 45, 11 L.P.R.A. sec. 2; Rivera v. Ins. Wire Prods., Corp., 158 D.P.R. 110, 126-127 (2002); Bruno Colón v. Comisión Industrial, *supra*.

[23] Véanse Rivera Avilés v. F.S.E., 113 D.P.R. 334 (1982); Bruno Colón v. Comisión Industrial, *supra*; Montaner Admor. v. Comisión Industrial, 55 D.P.R. 270 (1939).

que fueron resueltos no existía el Comité, por lo que no se consideraban los factores socio-económicos. Sin embargo, la inclusión de esos factores en el proceso lógicamente no tiene por qué cambiar la doctrina prevaleciente. Al contrario, ante un estatuto de carácter remedial dirigido -entre otros fines- a brindar protección a los familiares de un obrero fallecido, es evidente que la inclusión de tales factores tuvo como fin ampliar el alcance compensatorio de la Ley, al incluir como criterio "el efecto [de un] impedimento físico sobre la habilidad de un obrero trabajador para realizar un empleo remunerativo".[24] No vemos cómo no podrían aplicarse tales factores en casos *post mortem*. **En otras palabras, la muerte de un obrero o empleado lesionado no es causa para detener automáticamente el proceso de evaluación dirigido por el Comité.**

Por su parte, ¿cuáles son las consecuencias de la muerte de un obrero lesionado? ¿Qué derechos tienen los dependientes o beneficiarios del obrero fallecido? De entrada, es importante destacar que en nuestro ordenamiento jurídico hemos reconocido que los derechos y las compensaciones concedidas a los obreros o empleados, en virtud de la Ley Núm. 45, son de carácter personalísimo.[25] Es decir, la Ley Núm. 45 es una de dependencia y no de herencia, ya que en la situación de que un obrero protegido por dicha Ley muera, los beneficios económicos

---

[24] Rodríguez Ortiz v. Comisión Industrial, *supra*, pág. 772.

[25] Alonso García v. Comisión Industrial, 103 D.P.R. 183, 184 (1974).

correspondientes, no pasan automáticamente a sus herederos, sino a los beneficiarios definidos por la propia Ley.[26] "Los dineros provenientes de dicha compensación no son, por tanto, un bien patrimonial transmisible por reglas de herencia a herederos no dependientes".[27] Ciertamente, al tratarse de un derecho personalísimo los herederos no tienen derecho a subrogarse en la posición del empleado fallecido, por el mero hecho de ser herederos, sino que la Ley Núm. 45 reconoce beneficios solamente a los dependientes del empleado fallecido.[28]

Precisamente, la Ley Núm. 45 dispone con claridad los efectos que tiene la muerte de un obrero o empleado lesionado. Según la Ley, los efectos serán distintos a base de la causa de muerte del obrero, ya sea porque la muerte ocurre por causa del accidente o enfermedad, o porque la muerte ocurre por cualquier causa independiente a la lesión recibida.

En el primer escenario, cuando la muerte surja "como resultado del accidente sufrido" o "por razón de enfermedad ocupacional compensable", la Ley establece ciertos pagos. Entre esos pagos están los gastos del funeral hasta un máximo de $1,500 y otros gastos como los de asistencia médica, hospitalización y medicinas incurridos por orden de la C.F.S.E. para los casos en los que el obrero no deja dependientes, y además, una compensación a graduarse según

---

[26] Camacho Rodríguez v. F.S.E, 121 D.P.R. 877, 882 (1988).

[27] Rivera Avilés v. F.S.E., *supra*, págs. 335-336.

[28] 11 L.P.R.A. sec. 3.

lo expresa la misma ley para los casos en los que le sobrevivan dependientes.[29] Ante tales circunstancias a los beneficiarios se les compensa por la muerte del obrero pero no se les pagan los beneficios que le hubiesen correspondido en vida al empleado.[30]

En contraste con lo anterior, en el segundo escenario, cuando la muerte del obrero fue producto de una causa independiente a la lesión recibida, la Ley reconoce a los beneficiarios el derecho a recibir la pensión por incapacidad u otros beneficios. Específicamente, el inciso (d-3) del Art. 3 de la Ley Núm. 45 dispone en lo pertinente que,

> [e]n todos los casos en que ocurriere **la muerte de un obrero o empleado por cualquier causa independiente a la lesión recibida en el accidente**, por la cual se **hubiere reconocido o esté pendiente de reconocerse una incapacidad total permanente**, se procederá en la siguiente forma:
>
> (1) Si el lesionado hubiere optado por una inversión, **el remanente de su compensación se pagará a los beneficiarios en pagos mensuales** de cuatrocientos treinta dólares ($430) sujeto a las limitaciones impuestas por el primer párrafo del inciso (e)(3)(C) de esta sección, si subsistieren otros beneficiarios además de la viuda, hijos o concubina, la distribución se hará con sujeción a las disposiciones del inciso (e)(3) de esta sección.
>
> (2) Si el lesionado no hubiere optado por una inversión, la compensación total se computará multiplicando quinientas cuarenta (540) semanas por su compensación semanal equivalente al sesenta y seis y dos tercios (66⅔) del jornal semanal que el lesionado percibía el día del accidente o que hubiere de percibir a no ser

---

[29] Art. 3, inciso (e), Núms. (1) al (3), sub-incisos (a) al (i) según apliquen de la Ley Núm. 45, *supra*, 11 L.P.R.A. sec. 3.

[30] Bruno Colón v. Comisión Industrial, *supra*.

por la ocurrencia del accidente, pero en ningún caso se calcularán semanas de más de cien dólares ($100), ni menos de treinta dólares ($30). La compensación total no excederá en ningún caso de treinta y dos mil cuatrocientos dólares ($32,400). **De la compensación total así computada se deducirá el montante pagado al trabajador lesionado con anterioridad a su muerte y el remanente se pagará a sus beneficiarios**, en la forma y con las limitaciones dispuestas en la cláusula (1) de este inciso.

(3) Sujeto a las limitaciones dispuestas en las cláusulas (1) y (2) de este inciso, a los fines de realizar una inversión que a juicio del Administrador fuere provechosa, éste podrá anticipar al cónyuge, concubinario o concubina sobreviviente hasta un cincuenta por ciento (50%) del valor total de sus pagos mensuales futuros al momento de hacerse la inversión. Una vez hecha la inversión, los pagos mensuales al cónyuge, concubinario o concubina con cargo al remanente se reducirán proporcionalmente de forma tal que el período de pago del remanente al momento de hacerse la inversión permanezca inalterado, sin tomar en consideración las mensualidades mínimas provistas en este capítulo. El Administrador del Fondo del Seguro del Estado podrá autorizar más de una inversión a un mismo cónyuge, concubinario o concubina pero nunca más de una en un período de tres (3) años consecutivos. Los pagos mensuales con cargo al remanente cesarán si el cónyuge, concubinario o concubina se casara, viviera en concubinato o muriera. De ocurrir una de las situaciones indicadas en la oración anterior y existir menores dependientes con derecho a beneficios, sus pagos mensuales serán aumentados distribuyéndose con preferencia entre dichos menores dependientes la mensualidad con cargo al remanente que recibía el cónyuge, concubinario o la concubina. En ausencia de menores dependientes el Administrador del Fondo del Seguro del Estado estará obligado a hacer una redistribución de la compensación entre los demás beneficiarios. El Administrador del Fondo del Seguro del Estado investigará todo lo concerniente a la inversión que se desea hacer y de determinar que no hay peligro, antes de autorizar la inversión, tendrá la obligación de velar por que la inversión resulte provechosa tanto para el cónyuge, concubinario o la concubina, como

para los beneficiarios menores de edad, de existir los mismos.

En todos los casos en que ocurriere la muerte de un obrero o empleado por cualquier causa independiente a la lesión recibida en el accidente, por la cual se hubiere reconocido o esté pendiente de reconocerse una incapacidad parcial permanente, el Administrador del Fondo del Seguro del Estado deberá, previa la prueba justificada al efecto conceder y ordenar que se pague el balance no pagado de cualquier compensación correspondiente a dicha incapacidad parcial permanente perteneciente o que se adeude al obrero o empleado lesionado al tiempo de su muerte, a aquellos que dependieran para su subsistencia del obrero o empleado fallecido, en cuyos derechos quedan expresamente subrogados. La compensación total a otorgarse deberá incluir cualquier pago por concepto de incapacidad transitoria a que tuviere derecho el trabajador y que no se le hubiere pagado antes de su muerte. Disponiéndose, que los pagos a las personas dependientes del trabajador se efectuarán dentro de un plazo que no excederá de doce (12) meses, según determine el Administrador.[31]

Conforme a la disposición transcrita, la Ley Núm. 45 reconoce unos derechos de compensación a los beneficiarios de aquel obrero lesionado que muera por cualquier causa independiente al accidente o la enfermedad sufrida. Asimismo, expone que dicha disposición aplicará en los casos en los que se hubiere reconocido o esté pendiente de reconocerse una incapacidad total o parcial permanente. En el caso particular de la frase "pendiente de reconocerse" no existe una definición o alcance establecido. Sin embargo, a base de las disposiciones de la Ley podemos presumir que dicha expresión se refiere a que el proceso de determinación de una incapacidad permanente no termina con

---

[31] 11 L.P.R.A. sec. 3 (d).

la muerte del lesionado. Es decir, ante tales circunstancias los beneficiarios tendrían derecho a reclamar la compensación por incapacidad total permanente del empleado fallecido, que aunque esté por reconocerse, finalmente le sea reconocida.

III

En síntesis, los peticionarios alegan que los foros recurridos erraron al no permitir que el Comité continuara con el proceso de evaluación en el caso del señor Vázquez Pagán. Arguyen que tal evaluación no puede considerarse como un derecho personalísimo porque los factores socio-económicos inciden directamente en el entorno familiar del obrero lesionado. Puntualizan que tienen derecho a continuar con la causa de acción, máxime cuando la tardanza en la evaluación del caso es atribuible a la C.F.S.E.

Al examinar el expediente surge que la C.F.S.E. ordenó el cierre y archivo del caso del señor Vázquez Pagán porque este murió previo a la culminación del proceso de evaluación de su solicitud de incapacidad total permanente. Enfatizó que no procedía la otorgación de una incapacidad total permanente *post mortem,* ya que al quedar definitivamente fuera del mercado laboral, la agencia no tendría elementos de juicio para conceder dicha incapacidad. Al confirmar la decisión de la C.F.S.E., la Comisión Industrial expresó que no procedía la continuación de tal evaluación porque ello equivaldría a ordenarle a la C.F.S.E. actuar en el vacío.

Por su parte, el Tribunal de Apelaciones confirmó la decisión de la Comisión Industrial basándose en el principio de deferencia. El foro apelativo intermedio expresó que ante la muerte del señor Vázquez Pagán la agencia no podía tomar una determinación razonable sobre la otorgación de la incapacidad alegada. Sostuvo además, que como dicha muerte ocurrió por causas ajenas a la lesión, ello contravenía los propósitos de la Ley Núm. 45 que se enfocan en la enfermedad o lesión del empleado ocurrida en el ambiente laboral. Asimismo, el Tribunal de Apelaciones resaltó que los beneficios reclamados por los beneficiarios eran un derecho personalísimo del señor Vázquez Pagán, por ende, no heredables.

De entrada, como ya expusimos, los derechos y compensaciones concedidos a los obreros o empleados, en virtud de la Ley Núm. 45, son personalísimos. Por consiguiente, el Tribunal de Apelaciones no erró al concluir que la reclamación en cuestión es un derecho personalísimo. Ciertamente, como es un derecho personalísimo los peticionarios no tienen derecho a subrogarse en la posición del empleado fallecido por el mero hecho de ser herederos, sino que ellos sólo pueden reclamar los derechos que la Ley Núm. 45 les reconoce como dependientes del empleado fallecido.

Ahora bien, al examinar la Ley Núm. 45 en lo pertinente a la controversia que nos ocupa, encontramos que esta concede beneficios a las personas que dependían del

empleado u obrero fallecido al momento de su muerte, si la muerte está relacionada con algún incidente laboral. Sin embargo, cuando la muerte no está relacionada con el incidente laboral, la Ley reconoce ciertas instancias en las que los beneficiarios podrían recibir la compensación por incapacidad total permanente asignada al empleado fallecido. A tales efectos la Ley Núm. 45 reconoce que si un empleado u obrero muere por una causa ajena a su accidente laboral, sus beneficiarios pueden reclamar la compensación correspondiente a la incapacidad total permanente del empleado u obrero fallecido. Ello, si la incapacidad total permanente hubiese sido reconocida o estuviese pendiente de reconocerse. A base de las circunstancias descritas en la Ley Núm. 45, los beneficiarios tendrían derecho a reclamar la compensación ofrecida o por ofrecerse al empleado fallecido por su incapacidad total permanente. Así, los beneficiarios tendrían un interés económico sobre tal compensación.

En el caso de autos, no existe controversia con relación a que el señor Vázquez Pagán murió por una causa ajena a su accidente laboral. Tampoco está en controversia que el Comité comenzó el proceso de evaluación para determinar si el señor Vázquez Pagán estaba incapacitado total y permanentemente y a su vez, tampoco se ha controvertido el hecho de que dicho proceso de evaluación se interrumpió con la muerte del señor Vázquez Pagán. No obstante, a base del derecho aplicable expuesto, es

evidente que la muerte del lesionado no es causa suficiente para archivar o cerrar el caso de un obrero en el Comité. Es decir, la muerte del señor Vázquez Pagán no acarreaba el archivo automático de su caso.

Ante tal escenario, colegimos que los foros recurridos erraron al determinar que procedía el cierre y archivo automático del caso del señor Vázquez Pagán, por su mera muerte. Conforme a la Ley, los beneficiarios de éste podrían tener derechos sobre la posible otorgación de la incapacidad total permanente. Por ello, la C.F.S.E. debió culminar el proceso de evaluación con la prueba o los elementos de juicio que tenía ante su consideración. Hasta el momento del fallecimiento del señor Vázquez Pagán el Comité contaba con varios elementos de juicio, entre los que se encontraba el informe del especialista en rehabilitación. En dicho informe se reconoció que a base de la condición médica del señor Vázquez Pagán las expectativas de rehabilitación eran pobres.

Por otro lado, como parte del proceso, el Comité puede continuar con la evaluación de los factores socio-económicos del lesionado y sus beneficiarios o dependientes. Ello implica que el proceso puede continuar aunque el señor Vázquez Pagán haya fallecido. Tal proceder resultaría cónsono con la directriz de que la Ley Núm. 45 debe interpretarse liberalmente a favor de los beneficios de los empleados u obreros lesionados y sus dependientes. Además, conviene señalar que una vez culmine el proceso y

la C.F.S.E. concluya que la incapacidad alegada procede o no, no existe impedimento para que se otorgue una incapacidad *post mortem* en caso de que esa sea la decisión.

Así, pues, concluimos que el Tribunal de Apelaciones erró al confirmar el dictamen de la Comisión Industrial que avaló el cierre y archivo del caso del señor Vázquez Pagán, ya que no tomaron en cuenta el posible derecho que tenían los peticionarios sobre dicha compensación. Ello ante el hecho de que la Ley Núm. 45 contempla la posibilidad de ofrecer dicha compensación aún si el empleado muere por una causa ajena a la lesión y antes de ser reconocida la incapacidad.

IV

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve el caso a la Corporación del Fondo del Seguro del Estado para ulteriores procedimientos compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Daniel Vázquez Pagán<br>  Lesionado<br><br>Nora Hernández Morales, et al.<br>  Peticionarios<br><br>Policía de Puerto Rico<br>  Patrono Asegurado<br><br>v.<br><br>Corporación del Fondo del Seguro del Estado<br>  Recurrido<br><br>Comisión Industrial de Puerto Rico<br>  Agencia Recurrida | CC-2010-56 | Certiorari |

SENTENCIA

San Juan, Puerto Rico a, 24 de octubre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve el caso a la Corporación del Fondo del Seguro del Estado para ulteriores procedimientos compatibles con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera García no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo